**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re: Case No. 26-50403

Randy Scott Arneson, Chapter 13

Debtor(s).

---

**DEBTOR'S MOTION FOR EXAMINATION OF ATTORNEY COMPENSATION, ACCOUNTING, AND DISGORGEMENT OF FEES UNDER 11 U.S.C. § 329 AND RULES 2016 AND 2017, DECLARATION OF RANDY ARNESON, PROPOSED ORDER, OPPOSITION TO SHAW APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY AND CERTIFICATE OF SERVICE**

---

**PLEASE TAKE NOTICE that on November 18, 2026 at 1:00 pm via remote hearing, before the Honorable William J. Fisher, Richard Dahl, will move the Court for:**

(i) **an Examination Of Attorney Compensation, Accounting, And Disgorgement Of Fees Under 11 U.S.C. § 329 And Rules 2016 And 2017; and**

(ii) **Oppose the Shaw Application For Compensation And Reimbursement Of Expenses By And Certificate Of Service**

Debtor Randy Scott Arneson ("Debtor") requests for examination of the compensation paid to or agreed to be paid to Edward R. Shaw and Ed Shaw Law Office (together, "Shaw"), an accounting, and disgorgement or repayment of excessive or unearned compensation under *11 U.S.C. § 329(b), Federal Rules of Bankruptcy Procedure 2016 and 2017, 11 U.S.C. §§ 330 and 503(b)(2)* as applied through this Court's *Chapter 13 compensation guidance, and Local Rule 2016-1*. Debtor is represented for purposes of this motion by undersigned special bankruptcy counsel Richard Dahl. This motion concerns the conduct and compensation of current counsel Edward R. Shaw and therefore is brought directly on behalf of the Debtor. Debtor requests a hearing.[1]

---

[1] A NOTICE OF HEARING will be filed and served under *Local Rule 9013-2* once a hearing date is obtained from Judge Fisher's Courtroom Deputy (mnb_fisher_hearings@mnb.uscourts.gov; 651-848-1061). **Response date is**

## I. FACTUAL BASIS

1. Debtor Randy Scott Arneson ("Debtor") is the *Chapter 13 debtor in Case No. 26-50403*, filed May 26, 2026. Edward R. Shaw and Ed Shaw Law Office (together, "Shaw") has represented Debtor in this case and in the related stay-relief matter described below and remains counsel of record: this Court denied Shaw's motion for leave to withdraw by order dated October 13, 2026.

2. The bankruptcy engagement agreement provided for a $10,000 flat fee pursuant to a written Joint Flat Fee Agreement for "Bankruptcy," signed by Debtor, Kirstin Arneson, and Shaw on June 9, 2026. (Emphasis added.) [See **EXHIBIT A** – Fee Agreement of 6.9.2026 (hereinafter "**FLAT FEE AGREEMENT**")].

4. In the FLAT FEE AGREEMENT (Ex. A), Shaw agreed to accept a $10,000 flat fee "in lieu of a retainer and an hourly charge" and agreed Debtor "will not be charged an additional fee if the project takes more time than the lawyer expected." (Emphasis added.)

5. The FLAT FEE AGREEMENT's Special Notes (Ex. A) describe the project as "Amend Chapter 13 Bankruptcy Filing," and it provides that "no" portion of the fee is held in trust, that the fee is the attorney's property on receipt, and — critically — that the client is entitled to a refund of all or part of the fee if the agreed services are not provided. (Emphasis added.) **Shaw has already taken ALL his fees without putting the funds in Trust and without the Bankruptcy Court's approval of the debtor's attorney fee as reasonable as required under 11 U.S.C. § 330(a)(4)(B)**.

6. The services Shaw undertook in the FLAT FEE AGREEMENT (Ex. A), include the following: preparation and filing of the petition, plan, and schedules, representation at the §

---

**seven days before the hearing under the Court's local practice**.]

*341* meeting, and answering Debtor's questions during the case. (Emphasis added.)

7. The FLAT FEE AGREEMENT (Ex. A), further contains language, at page 2, that contradicts having a “flat fee” stating that one half of the fee is for “availability only” with legal services "charged separately," which is in direct conflict and is misleading given the references to the flat-fee terms which Shaw should have explained.) (Emphasis added.)

8. The stay-relief engagement included an $8,000 retainer plus $1,000. It was a separate Client Fee Agreement called a — Retainer for Motion for Relief from Stay, signed June 10, 2026 and styled an "Amended" agreement. [See **EXHIBIT B** – Fee Agreement of 6.10.2026 (hereinafter “**STAY RELIEF RETAINER**”)].

8. The STAY RELIEF RETAINER (Ex. B), was billed hourly, as follows: Shaw at $390/hour; associates at $320 / $300; paraprofessionals at $260; assistants at $240), then required an $8,000 minimum retainer against fees and expenses, and stated in bold that the initial retainer "is not a fixed fee, and the total cost may be, and most likely will be, more than your initial retainer," with a duty to replenish if the balance fell below 40%.

9. The STAY RELIEF RETAINER (Ex. B), promises, three times, that any unused retainer will be refunded directly to the client, and its Client Bill of Rights includes the right to an accounting for all client funds.

10. What was paid to Shaw in TOTAL was $19,000, $10,000 under the FLAT FEE AGREEMENT (Ex. A) and $9,000 under the STAY RELIEF RETAINER (Ex. B).

11. Shaw's own CosmoLex transaction ledger for the stay-relief matter, Matter 4190-001, printed September 4, 2026, corroborates the $9,000: two $4,000 deposits into Shaw's trust account on June 10, 2026 (one cash, one certified check, both from Kirstin Arneson), and a further $1,000 credit-card deposit into trust on July 24, 2026. [See **EXHIBIT C** – CosmoLex

transaction ledger of 9.4.2026, (hereinafter "**TRUST TRANS REPORT**").

12. See also **EXHIBIT K** – Additional receipts evidencing the $10,000 flat fee appended hereto (hereinafter as the "**$10,000 PAYMENT**").

13. The TRUST TRANS REPORT (Ex. C), shows Shaw transferred the entire $9,000 out of trust to his operating account in the amount of $6,518.17 on July 1, 2026; $2,220.33 on August 3, 2026; and $261.50 on September 2, 2026 — totaling exactly $9,000.00, leaving a trust balance of zero, without approval of the court.

13. The TRUST TRANS REPORT (Ex. C), itemizes no time entries, tasks, or invoices against which those transfers were applied.

14. An accounting requires that the transfers correspond to services actually rendered at the agreed rates and times and court approval.

15. On August 12, 2026, Shaw's office requested an additional $2,500 (**EXHIBIT D**), and on August 17, 2026, an additional $3,000 (**EXHIBIT E**) — $5,500 in total — described as replenishment of the stay-relief retainer.

16. Debtor disputes that the amounts claims on **EXHIBITS D** and **E** are owed, whether they are cumulative or successive requests, and whether they represent earned fees or prepayment for future work. Further, Debtor did not pay them.

17. Debtor asked for an accounting and did not get one. On September 8, 2026, Debtor and his spouse wrote to Shaw requesting a complete matter-by-matter reconciliation, itemized services, and clarification of the retainer requests (See **EXHIBIT F — LTR CLIENT TO SHAW**).

18. Shaw has failed to provide an itemized accounting in response to The request for same of September 8, 2026.

19. By letter dated October 16, 2026, Debtor's non-bankruptcy counsel, Richard Dahl, made a settlement demand for return of all or part of the fee and renewed the Debtor’s demand for an itemized accounting via email, requesting: (i) a matter-by-matter ledger, detailed time records and invoices for the stay-related charges, (ii) all *Rule 2016(b)* disclosures and fee-approval orders, and (iii) clarification of the $2,500 and $3,000 requests, by October 21, 2026 — or, in lieu of the accounting, full return of the $19,000.

20. By email dated October 29, 2026, Mr. Dahl repeated the demand directly to Shaw, setting a deadline of noon on October 30, 2026, and stating that the Chapter 13 trustee had advised him that fees of $19,000 in a case of this kind are ordinarily appropriate only with major adversary litigation (none is present here) and that the customary Chapter 13 fee range is $4,500–$6,500 even with a few motions.

21. Despite the repeated demands, Shaw has not returned any of fees and has not made an accounting followed.

22. Shaw made the following court filing related to his claimed fees on October 7, 2026, filing an Application for Compensation (See **EXHIBIT G — ECF 100** )requesting $2,877.84 in "other services," and making a disclosure concerning compensation in an adversary proceeding (See **EXHIBIT H —COMPENSATION DISCLOSURE**). , which referenced $9,000 received, claiming a past-due balance of $2,727.84 (Exhibits G–H).

23. On October 9, 2026, Shaw withdrew the compensation application without prejudice (See **EXHIBIT I —ECF 102**).

24. On October 13, 2026, this Court denied Shaw's request to withdraw from the representation(See **EXHIBIT J —ECF 103**).

25. Shaw made inconsistent statements in these filings, seeking $2,877.84, but then stating $2,727.84 was past due and then failed to state their relationship to the $5,500 demanded in August of 2026.

26. Shaw's Disclosure of Compensation of Attorney for Debtor, signed May 27, 2026 (Local Form 1007-1), filed under 11 U.S.C. § 329(a) and Rule 2016(b), (See **EXHIBIT K — $10,000 PAYMENT**), discloses only the $10,000 bankruptcy fee — agreed, received, $0 balance due. It does not disclose the $8,000 stay-relief retainer received on June 10, 2026, the additional $1,000 received on July 24, 2026, or any agreement to be paid those amounts, and no supplemental disclosure covering them has been identified in this case. ECF No. 101**,** is an adversary-proceeding disclosure but does not appear to cure the omission in this case.

27. Shaw continues to assert claims for payment of fees, and by automated invoice dated November 3, 2026, Shaw's office billed Debtor $306.67, stating the amount would be applied automatically if the retainer trust had sufficient funds and warning that work may stop if the retainer is not prefunded. The trust balance for the stay-relief matter was, on Shaw's own ledger, zero as of September 2, 2026. [See **EXHIBIT L —INVOICE 11.3.2026**).]

28. The Debtor has paid $19,000; no plan has been confirmed (confirmation was denied September 22, 2026); two motions to dismiss are pending; Shaw sought to withdraw mid-case after Debtor declined to pay $5,500 more; and Debtor has no accounting showing what the $19,000 bought. The Debtor requests that the Court to examine what was earned, what was properly transferred from trust, and what must be returned.

## II. ARGUMENT

29 . *Section 329(a)* and *Rule 2016(b)* required Shaw to disclose all compensation paid or agreed to be paid in contemplation of or in connection with this case, and to supplement that disclosure as further compensation was paid or agreed.

23. Shaw's May 27, 2026 disclosure omits $9,000 (paragraph 9). The Court should determine which disclosures were required, when they were made, and the consequences of any omission.

24. Under *11 U.S.C. § 329(b)*, if compensation exceeds the reasonable value of the services rendered, the Court may cancel the agreement or order return of the excessive portion.

25. *Rule 2017* provides the procedure for examining covered compensation transactions, including payments made after an order for relief in contemplation of the filing.

14.

26. *Local Rule 2016-1(c)* requires Chapter 13 debtors' counsel compensation applications to comply with the Court's Guidance: Applications for Compensation by Debtors' Attorneys in Chapter 13 Cases (August 2026) (**EXHIBIT M**).

27. Part II of the Guidance sets a $4,000 presumptively reasonable fee for the defined package of ordinary Chapter 13 services, which includes timely preparation and revision of the petition, plan, statements, and schedules, responses to confirmation objections, and necessary modified preconfirmation plans.

28. The $10,000 flat fee is two and one-half times that benchmark for the same core services — not an absolute cap, as Debtor acknowledges, but a benchmark Shaw must justify with the itemization Parts VII and VIII require for compensation above the presumptively reasonable amount.

29. Part III of the Guidance excludes responding to motions for relief from the stay (and adversary proceedings) from the $4,000 package, so the $9,000 stay-relief engagement is reviewed separately — for reasonableness, itemization, court approval where required, and compliance with the retainer agreement's own terms, including its promises that unused retainer funds would be refunded and that the client may obtain an accounting of all client funds. Shaw's ledger shows $9,000 of trust funds transferred to operating in three unexplained lump sums; lump-sum transfers without itemization do not satisfy that review.

16. Part X of the Guidance addresses compensation where a case is dismissed before confirmation, which is directly relevant if the pending dismissal motions are granted: counsel's entitlement in that posture is limited as the Guidance provides, and Debtor reserves all rights under Part X.

30. Independently of the Guidance, the flat-fee agreement itself entitles Debtor to a refund of all or part of the $19,000 if the agreed services were not provided. Confirmation was never obtained and the plans counsel prepared were denied confirmation; which of the agreed services were in fact provided, and to what standard, is part of the examination requested.

## III. RELIEF REQUESTED

Debtor respectfully requests that the Court:

A. Set this motion for hearing, or establish a schedule for responses and for production of supporting records;

B. Direct Shaw to produce and file: the executed engagement agreements and any earlier or amended versions (including any pre-"Amended" stay-relief retainer); all § 329 / Rule 2016(b) disclosures and supplements; a matter-by-matter ledger of all amounts received; all time entries and invoices; trust ledgers and reconciliations for Matter 4190-001 and the bankruptcy matter; records of all payments and transfers; and a written explanation of each amount claimed to remain owing (including the August 12 and August 17 requests, ECF Nos. 100–101, and the November 3, 2026 invoice);

C. Examine the $19,000 received and all additional compensation sought or agreed to be paid, and determine what portion, if any, exceeds the reasonable value of the services rendered or was not earned, properly disclosed, or properly transferred from trust;

D. Order return of the excessive or unearned portion, up to the $19,000 received, to the recipient required by § 329(b), and determine the treatment of any unearned trust balance;

E. Determine whether any additional claimed compensation (including the $5,500 in August requests and the $306.67 November invoice) is allowable or enforceable, without presuming those amounts are cumulative; and

F. Award such other and further relief as the Court deems just.

DAHL LAW FIRM

Dated: November 10, 2026

/s/ Richard Dahl

Richard Dahl [MN Atty ID 0281104]
406 W WASHINGTON STREET, Suite 5
BRAINERD, MN 56401
T: (612) 220-1216
E: rdahl55@aol.com; rdahl71@outlook.com
Attorney(s) for Debtor Randy Scott Arneson

## CERTIFICATE OF SERVICE

I certify that on November 10, 2026, I caused the foregoing DEBTOR'S MOTION FOR EXAMINATION OF ATTORNEY COMPENSATION, ACCOUNTING, AND DISGORGEMENT OF FEES UNDER 11 U.S.C. § 329 AND RULES 2016 AND 2017 AND CERTIFICATE OF SERVICE to be filed electronically through the Court's CM/ECF system, which caused notice of such filing to be served electronically upon all registered CM/ECF participants, including:

See attached SERVICE LIST.

I further certify that any party not registered to receive notice through CM/ECF was served by United States Mail, first-class postage prepaid, addressed to such party's last known address.

DAHL LAW FIRM

Dated: November 10, 2026

/s/ Richard Dahl

Richard Dahl [MN Atty ID 0281104]
406 W WASHINGTON STREET, Suite 5
BRAINERD, MN 56401
T: (612) 220-1216
E: rdahl55@aol.com; rdahl71@outlook.com
Attorney(s) for Debtor Randy Scott Arneson

**SERVICE LIST**

Randy Scott Arneson
8684 Interlachen Road
Lake Shore, MN 56468

Edward Randolph Shaw
Attorney Edward R. Shaw P.A.
722 S 6th St
Brainerd, MN 56401
218-825-7030
Email: amanda@edshawlaw.com

Kyle Carlson
Chapter 13 Bankruptcy Trustee
P.O. Box 519
55 Southwest 2nd Ave
Barnesville, MN 56514
T: 218-354-7356; 218-331-4429; F: 218-331-4476
E: kcarlson@carlsonch13mn.com

Trustee's Staff Attorney
Mike Gieseke
E: mgieseke@carlsonch13mn.com

Mike Gieske
Office of US Trustee
1015 US Courthouse, 300 S 4th St
Minneapolis, MN 55415
612-334-1350
E: mgieseke@carlsonch13mn.com